1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

EARL PORTIS,

Civil No.   06cv0314-DMS (POR)

11

Plaintiff,

**REPORT AND RECOMMENDATION
ON PETITION FOR WRIT OF HABEAS
CORPUS**

12

v.

13

J. MARSHALL, Warden,

14

Defendant.

15
16

**I. Introduction**

17

Petitioner Earl Portis ("Petitioner"), a state prisoner proceeding *pro se*, filed a Petition for

18

Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in San Diego

19

Superior Court, in Case No. D042304.  In accordance with Local Rule 72.1(d), this Court issues the

20

following Proposed Findings of Fact and Recommendation for Disposition.  For the reasons set forth

21

below, the Court respectfully recommends that the petition be denied.

22

**II. Background**

23

**A.      Statement of Facts**

24

Under 28 U.S.C.A. § 2254(e)(1), factual determinations by the state court are presumed

25

correct unless Petitioner rebuts the presumption by clear and convincing evidence.[1]  Petitioner has

26

27

[1] 28 U.S.C.A. §2254(e)(1) states:
In a proceeding instituted by an application for a writ of habeas corpus by a
person in custody pursuant to a judgment of a State court, a determination of a
factual issue made by a State court shall be presumed correct. The applicant shall

28

not attempted to rebut the factual findings made by the state court.  The following facts, therefore,

are taken verbatim from the California Court of Appeal's opinion in Petitioner's case.

FACTS

On September 4, 2002, San Diego Police Officer Steven Dyer was working undercover in a narcotics operation.  Around 9:00 p.m. he went with marked $ 20 bills to the area of the Aztec Liquor store on El Cajon Boulevard.  There, he spoke with Johnele Stills and told her he was looking for "40," street terminology for $40 worth of rock cocaine.  She told him to wait at the side of the store and she walked toward her house.  She returned in about five minutes and told Dyer "her man" who "usually 'serves up,'" was out.  She told Dyer that if he gave her the money she knew a spot close by to get the drugs.  He refused to give her the money.  When Portis walked by, Stills approached and hugged him like they knew each other.  Dyers heard Stills ask Portis if he could "get us a 40."  Portis responded, "Yeah.  It's coming.  It's coming."  Portis went and waited near the entrance of the liquor store.  Stills told Dyer that Portis was going to "get it for us."  On several occasions Portis held a cellular telephone near his face.  Dyer gave Stills the marked bills.  Portis flagged down a car Alexander Weir was driving.  The car pulled into the parking lot.  Stills and Portis met with the driver.  Stills returned to Dyer and handed him the rock cocaine.  Dyer advised detectives waiting nearby and they arrested Stills on the street and arrested Portis and Weir in the Aztec liquor store.  Weir had the marked $ 20 bills in his pocket.  A large amount of rock cocaine and marijuana was found in the trunk of the car Weir was driving.

Portis testified [at trial].  He denied saying, "It's coming.  It's coming" and denied connecting Stills with Weir in the drug transaction. . . .

People v. Portis, 2004 Cal. App. Unpub. LEXIS 3664 *1, *2-3 (4th Dept. 2004).[2]

**B.    State Court Proceedings**

On April 11, 2003, after a court trial, Petitioner was found guilty of one count of California

Health and Safety Code § 11352(a)[3], for the sale of cocaine base.  (Lodgment 2 at 311-12.)  On June

---

have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.A. § 2254(e)(1) (2006).

[2]The Court of Appeal decision was filed as Lodgment 6 by Respondent, however it did not include pages 2 and 4.  Therefore, this Court relied on the unpublished decision reported online at www.lexis.com.  Any further references to the decision will be cited to the Lexis reporter.

[3]California Health and Safety Code § 11352(a) reads in part:

[E]very person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport [a] controlled substance . . . unless upon the written prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this state, shall be punished by imprisonment in the state prison for three, four, or five years.

1   6, 2003, a sentencing hearing was held, and Petitioner filed a motion for a new trial.  (Lodgment 1

2   vol. 2 at 260.)  The motion for a new trial was denied and Petitioner was sentenced to eight years

3   imprisonment.  (Lodgment 1 at 319, 321.)

4         On June 9, 2003, Petitioner filed a notice of appeal (Lodgment 1 at 266), and on November

5   6, 2003, Petitioner filed an opening brief for appeal of the conviction in the California Court of

6   Appeal, Fourth Appellate District, Division One. (Lodgment 3.)  Petitioner's appeal asserted that his

7   conviction was based on circumstantial evidence insufficient to support a conviction. (Lodgement 3

8   at 10-23.)  The California Court of Appeal affirmed the conviction on April 15, 2004, finding that

9   there was sufficient evidence from which to draw a reasonable inference that Petitioner aided and

10   abetted the sale of rock cocaine.  <u>People v. Portis</u>, 2004 Cal. App. Unpub. LEXIS 3664, *5 (Cal. Ct.

11   App. Apr. 15, 2004).

12         On June 16, 2004, Petitioner filed a petition for review before the California Supreme Court.

13   (Lodgment No. 7.)  Petitioner argued that the appellate court misapplied state and federal law in its

14   decision, and that there was not sufficient evidence that Petitioner had aided or abetted a drug sale.

15   (Lodgment 7 at 5-8.)  On June 30, 2004, the California Supreme Court denied that petition for

16   review without discussion or citation.  (Lodgment No. 8.)

17         Petitioner filed a petition for writ of habeas corpus in the San Diego Superior Court[4]

18   asserting that by not listening to the audio surveillance tape recorded by police in conjunction with

19   the narcotics operation, the trial court made an evidentiary error.  The petition also claimed that the

20   evidence introduced at Petitioner's trial contradicted the recollections of witnesses, and therefore

21   Petitioner did not receive a fair trial. (Lodgment 9.)  On October 28, 2004, the Superior Court denied

22   the petition finding that claims raised on appeal cannot be raised in state habeas petitions, absent

23   special circumstances.   (Lodgment 10 (citing <u>In re Huffman</u>, 42 Cal. 3d 552, 554-555 (1982); <u>In re</u>

24   <u>Terry</u>, 4 Cal. 3d 911, 927 (1971)).)  Denial of the petition was also based on California law that

25

26   _____

27   Cal. Health & Saf. Code § 11352(a) (West 2006).

28       [4]The lodgments do not indicate the date the petition was filed, but the petition includes a declaration of service by mail dated August 23, 2004.  This Court requires no further due diligence because the timing of the petition does not affect the Petition currently before this Court.

1    issues that should have been raised on appeal but were not, cannot subsequently be raised in state

2    habeas petitions.  (Lodgment 10 (citing In re Clark, 5 Cal. 4th 750, 765 (1993); In re Dixon, 41 Cal.

3    2d 756, 759 (1953).)  The court further found that Petitioner failed to offer any special

4    circumstances warranting review of his claims.  (Lodgment 10 at 2.)

5         Petitioner then filed a petition for writ of habeas corpus with the California Court of Appeal,

6    Fourth Appellate District, asserting that his conviction by the trial court was not supported by

7    sufficient evidence, that the trial court abused its discretion by not listening to the entire police

8    surveillance tape and by denying Petitioner's expert witness, and that ineffective assistance of

9    counsel in the trial and the appeal denied him due process of law.[5]  (Lodgment 11.)  The California

10   Court of Appeal denied the petition on January 21, 2005. (Lodgment 12.)  In addressing the claim of

11   insufficient evidence, the court found that the claim was considered and rejected on direct appeal,

12   and thus could not be reconsidered.  (Lodgment 12 at 12 (citing In re Clark, 5 Cal.4th 750, 765

13   (1993)).)  On the issue of the police surveillance tape, the Court of Appeal found that the issue could

14   have been raised on appeal and therefore could not be first raised in a habeas petition.  (Lodgment

15   12 (citing In re Harris, 5 Cal.4th 813, 829 (1993)).)  The Court of Appeal also held that Petitioner

16   had not stated a prima facie case for relief on that claim. (Lodgment No. 12 at 2-3.)  Similarly, on

17   the issue of the exclusion of the expert witness, the Court of Appeal found that Petitioner failed to

18   offer any facts or evidence to support that claim.  (Lodgment 12 at 3.)  As for the claims of

19   ineffective assistance of counsel, the Court of Appeal found that Petitioner failed to state facts and

20   submit evidence to show that the attorneys' performance was deficient or to show how any

21   deficiencies prejudiced the trial or appellate result. (Lodgment 12 at 4.)

22        Petitioner then filed a petition for writ of habeas corpus with the California Supreme Court

23   on February 28, 2005, raising the same five issues raised in the petition to the Court of Appeal,

24   Fourth Appellate District: (1) violation of due process by a conviction on insufficient evidence, (2)

25   judicial bias by the trial court in failing to review the full police surveillance tape, (3) judicial bias in

26   denying Petitioner's expert witness, (4) ineffective assistance of trial counsel, and (5) ineffective

27

28        [5]The lodgments, again, do not indicate the date the petition was filed, but included is a declaration of service by mail dated November 11, 2004.  This Court requires no further due diligence because the timing of the petition does not effect the Petition currently before this Court.

1    assistance of appellate counsel.  (Lodgment 13.)  On January 18, 2006, the California Supreme

2    Court denied the petition without comment or citation.  (Lodgment No. 14.)

3            On December 12, 2005, Petitioner filed another petition for a writ of habeas corpus in the

4    Superior Court of California.  (Lodgment No. 15.)  Petitioner asserted judicial misconduct in the

5    form of discourteous and disparaging remarks, the court's failure to listen to the complete police

6    surveillance tape, and the denial of defendant's proposed expert witness testimony. (Lodgment 15.)

7    The Superior Court denied the petition on January 24, 2006.  (Lodgment No. 16.)  The Superior

8    Court found that on the issues of the audiotape and expert witness, Petitioner could not raise the

9    issues of errors in evidentiary rulings through the habeas process because they should have been

10   raised on appeal.  (Lodgment 16 at 3-4.)  Regarding the disparaging remarks, the Superior Court

11   found that Petitioner provided only "unsubstantiated, self-serving statements" that were insufficient

12   to prove his claims.  (Lodgment 16 at 4 (citing In re Alvernaz, 2 Cal. 4th 924, 945 (1992)).)

13   **C.      Federal Court Proceedings**

14           On February 13, 2006, Petitioner filed the current petition for a writ of habeas corpus in the

15   United States District Court for the Southern District of California.  (Petition, Docket No. 1.)

16   Petitioner asserts the same five claims raised in his petition before the California Supreme Court: (1)

17   violation of due process due to a conviction on insufficient evidence, (2) judicial bias by the trial

18   court in failing to review the full police surveillance audio tape or transcript thereof, (3) trial court

19   judicial bias in denying Petitioner's expert witness, (4) ineffective assistance of trial counsel, and (5)

20   ineffective assistance of appellate counsel.  After this Court granted an enlargement of time for

21   response, the Respondent filed an answer to the Petition with an accompanying memorandum of

22   points and authorities in support and lodgments, on May 5, 2006.  (Docket Nos. 8, 9, 10.)  On July 5,

23   2006, Petitioner filed his traverse.  (Traverse, Docket No. 12.)  By Order of this Court, the case was

24   deemed submitted on the papers without oral argument.  (Docket No. 3.)

25                                  **III. Standard of Review**

26           Title 28 U.S.C. section 2254(a), allows for federal review of "the judgment of a State court

27   only on the ground that [the habeas petitioner] is in custody in violation of the Constitution or laws

28   or treaties of the United States."  28 U.S.C. § 2254(a) (2006).  The Antiterrorism and Effective

1   Death Penalty Act of 1996 ("AEDPA") applies to habeas corpus petitions filed after 1996.  Lindh v.

2   Murphy, 521 U.S. 320 (1997).  The current petition was filed in 2006, and is governed by the

3   AEDPA.  As amended by the AEDPA, 28 U.S.C. section 2254(d) reads:

4           An application for a writ of habeas corpus on behalf of a person in custody pursuant to
            the judgment of a State court shall not be granted with respect to any claim that was
5           adjudicated on the merits in State court proceedings unless the adjudication of the claim-
            -
6           (1) resulted in a decision that was contrary to, or involved an unreasonable application
            of, clearly established Federal law, as determined by the Supreme Court of the United
7           States; or
            (2) resulted in a decision that was based on an unreasonable determination of the facts
8           in light of the evidence presented in the State court proceeding.

9
10  28 U.S.C. § 2254(d) (2006).

11          To obtain federal habeas relief, Petitioner must satisfy either section 2254(d)(1) or section

12  2254(d)(2).  The Supreme Court interprets section 2254(d)(1) as follows:

13          [T]he unreasonable application prong of § 2254(d)(1) permits a federal habeas court to
            grant the writ if the state court identifies the correct governing legal principle from this
14          Court's decisions but unreasonably applies that principle to the facts of petitioner's case.
            In other words, a federal court may grant relief when a state court has misapplied a
15          governing legal principle to a set of facts different from those of the case in which the
            principle was announced.  In order for a federal court to find a state court's application
16          of our precedent unreasonable, the state court's decision must have been more than
            incorrect or erroneous.  The state court's application  must have been objectively
17          unreasonable.

18  Wiggins v. Smith, 535 U.S. 510, 520-1 (2003) (citations and quotations omitted).  As for section

19  2254(d)(2), "a federal court may not second-guess a state court's fact-finding process unless, after

20  review of the state-court record, it determines that the state court was not merely wrong, but actually

21  unreasonable." Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir. 2004) (citing Lockyer v. Andrade,

22  538 U.S. 63, 75 (2003)).   Furthermore, the AEDPA requires that deference be given to state court

23  findings of fact, with state court factual determinations presumed correct unless the petitioner rebuts

24  them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1) (2006).

25          Where there is no reasoned decision from the state's highest court to review, a federal court

26  "looks through" the silent state court decision to the "last reasoned opinion" issued in the state's

27  courts.  Ylst v. Nunnemaker, 501 U.S. 797, 803, 805 (1991).  If the dispositive state court order does

28  not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of

1    the record "to determine whether the state court clearly erred in its application of controlling federal

2    law." <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000).

3        In Petitioner's case, the last reasoned state court opinion on his claims regarding the police

4    surveillance tape and the proposed expert witness is the San Diego Superior Court's decision on his

5    second state habeas petition, dated January 24, 2006 and filed with this Court as Lodgment 16. As

6    for the remaining claims in the instant petition, the California Supreme Court denied Petitioner's

7    state petition for writ of habeas corpus without comment. Therefore, in reviewing Petitioner's

8    claims of insufficient evidence and ineffective assistance of counsel, this Court looks to the reasoned

9    opinion by the California Court of Appeal dated January 21, 2005 - filed with this Court as

10    Lodgment 12 - which denied Petitioner's first state habeas petition. <u>Ylst</u>, 501 U.S. at 801-06.

11                                                  **IV. Discussion**

12    **A.**       **Insufficient Evidence Claim**

13        As his first ground for relief, Petitioner asserts that insufficient evidence was presented at

14    trial to prove beyond a reasonable doubt that he aided and abetted the sale of cocaine. Petitioner

15    contests that the evidence at trial established no more than his presence at the scene. (Petition at 27-

16    28.) The California Court of Appeal rejected Petitioner's claim because it had been considered on

17    direct appeal and Petitioner offered no new arguments which would justify a reconsideration of the

18    decision reached on appeal. (Lodgment 12 at 2.) Respondent argues that this decision was a

19    reasonable application of federal law because the decision relied on the same court's earlier opinion

20    which applied the federal standard of review for sufficiency of the evidence claims, from <u>Jackson v.</u>

21    <u>Virginia</u>, 443 U.S. 307 (1979). (Respondent's Memorandum at 9.)

22        The federal constitutional right to due process "protects the accused against conviction

23    except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with

24    which he is charged." <u>In re Winship</u>, 397 U.S. 358, 364 (1970). When a habeas petitioner claims

25    that there was insufficient evidence produced at trial to support a conviction, a federal court

26    determines whether "after viewing the evidence in the light most favorable to the prosecution, any

27    rational trier of fact could have found the essential elements of the crime beyond a reasonable

28    doubt." <u>Jackson v. Virginia</u>, 443 U.S. 301, 319 (1979). Deference is provided to the trier of facts'

1    weighing of the evidence by reviewing "*all of the evidence . . .* in the light most favorable to the

2    prosecution." Id. (emphasis in the original).  With the additional layer of deference established by

3    the AEDPA, Petitioner must demonstrate that the California Court of Appeal contradicted clearly-

4    established Supreme Court precedent by rejecting Petitioner's claim because no rational trier of fact

5    could have found Petitioner guilty beyond a reasonable doubt. Cf. Juan H. v. Allen, 408 F.3d 1262,

6    1274-5 (9th Cir. 2005).

7            With the evidence provided by the prosecution at trial, a rational trier of fact could have

8    found Petitioner guilty of facilitating the drug sale beyond a reasonable doubt.  The prosecution

9    offered the testimony of multiple officers involved in the undercover operation who placed

10   Petitioner at the scene.  (Lodgment 2 at 31-32 (testimony of Officer Kim Collier placing Petitioner at

11   the scene), 53-60 (testimony of Kathleen Bergman placing Petitioner at the scene), 86-87 (testimony

12   of Officer Joseph Harper placing Petitioner at the scene), 124-128 (testimony of Officer Steven Dyer

13   placed Petitioner at the scene).)  There was testimony that Petitioner acted as a middleman in the

14   drug sale by speaking with the undercover buyer and then motioning to the seller to summon him

15   towards the buyer. (Lodgment 2 at 57, 87, 126-7, 131-133.)  The trial court stated that the conviction

16   rested primarily on the reliability of witnesses and the transcript of the police surveillance tape.

17   (Lodgement 2 at 308-310.)  A reasonable trier of fact could have found the defense testimony

18   offered by the Petitioner, as well as testimony by another party accused of being involved in the

19   same transaction, to be less believable than the testimony of the police officers.  Thus a reasonable

20   trier of fact could have found the defendant guilty of facilitating the cocaine sale, thereby aiding in a

21   violation of California Health and Safety Code § 11352(a).  In rejecting Petitioner's claim that there

22   was insufficient evidence with which to convict him, the California Court of Appeal reasonably

23   applied clearly-established federal law, as established by Jackson v. Virginia, 443 U.S. 301 (1979).

24   **B.  Claims of Judicial Bias in Making Evidentiary Determinations**

25          Petitioner's second and third claims for relief assert judicial bias by the trial court, in failing

26   to review the full police surveillance tape in his case and in excluding Petitioner's expert witness

27   from his trial.  (Petition at 21-23.)  Respondent answers that both of these claims are procedurally

28   barred from federal review.  (Respondent's Memorandum at 5-8.)

06cv0314

**1. Procedural Default**

The last reasoned state court decision regarding Petitioner's claims of his second and third grounds for relief is the San Diego Superior Court's denial of his second state petition for a writ of habeas corpus. (Lodgment 16.)  The Superior Court denied both claims, stating that matters which should have been raised on direct appeal cannot be raised in a petition for habeas corpus except upon a showing of special circumstances. (Lodgment 16 at 3 (citing In re Clark, 5 Cal.4th 750 (1993) and In re Dixon, 41 Cal.2d 756 (1953)).)  The Superior Court also denied Petitioner's claims because decisions by the trial court regarding the exclusion of evidence cannot generally be reviewed by way of habeas petition. (Id. (citing In re Winchester, 53 Cal.2d 528 (1960)).)

Federal courts are precluded from reviewing the merits of a habeas claim when the state court has denied relief for the same claim on the basis of an independent and adequate state procedural rule.  Coleman v. Thompson, 501 U.S. 722, 729-30 (1990).  For a state procedural rule to be "independent," the state law basis for the decision must not be interwoven with federal law. Michigan v. Long, 463 U.S. 1032, 1040-41 (1983).  To be "adequate," the state procedural rule must be strictly or regularly followed and consistently applied.  Morales v. Calderon, 85 F.3d 1387, 1392 (9th Cir. 1996).

In Bennett v. Mueller, the Ninth Circuit determined that:

> the ultimate burden of proving the adequacy of the California state bar is upon the State of California. . . Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner.

322 F.3d 573, 585-86 (9th Cir. 2003).

Respondent has pled a California state procedural bar preventing claims that could have been raised on direct appeal from being raised in a state habeas petition. (Respondent's Memorandum at 6.)  However, Respondent is unable to meet his initial burden, under Bennett v. Mueller, of adequately pleading that this procedural bar is an adequate state ground which precludes federal review.  California's procedural bar against raising issues in a habeas petition if those issues were not raised on appeal is known as "the Dixon rule." See In re Dixon, 41 Cal. 2d 756 (1953), see also In re Clark, 5 Cal.4th 750, 765 (1993) .  Respondent urges that the Court find California's Dixon

1    rule to be an independent and adequate state basis for dismissal.  Respondent relies on the Ninth

2    Circuit's decisions in <u>Park v. California</u>, 202 F.3d 1146 (9th Cir. 2000), and in <u>Bennett v. Mueller</u>,

3    322 F.3d 573 (9th Cir. 2003).  However, those decisions established that California's state

4    procedural bar relating to untimely habeas petitions constitutes an independent state ground.   The

5    Ninth Circuit has yet to decide that decisions invoking the <u>Dixon</u> rule are precluded from federal

6    review.

7          Petitioner's conviction was in 2003, and both of his state habeas petitions were decided after

8    the California Supreme Court's decision in <u>In re Robbins</u>, 18 Cal. 4th 770 (1998).  In <u>Park v.</u>

9    <u>California</u>, the Ninth Circuit recognized that "[t]he California Supreme Court has adopted in

10   <u>Robbins</u> a stance from which it will now decline to consider federal law when deciding whether

11   claims are procedurally defaulted."  202 F.3d at 1152.  The Superior Court's denial of Petitioner's

12   second habeas petition states that "Petitioner fails to offer any special circumstances warranting

13   review of his claim".  (Lodgment 16 at 3.)  By this statement, the Superior Court implies that

14   Petitioner has not pled a 'fundamental constitutional error' in his state habeas petition.

15   'Fundamental constitutional error' is a special circumstance and thus an exception to the Dixon rule.

16   Prior to the California Supreme Court's decision in <u>Robbins</u>, state courts that considered a claim of

17   'fundamental constitutional error,' could be presumed to have done so by reference to federal law,

18   thus resulting in a decision based on state law but interwoven with federal law.  <u>Park v. California</u>,

19   202 F.3d at 1152.  Since the <u>Robbins</u> decision, no such presumption ought to be made.  Therefore, if

20   Petitioner's claims were read by the Superior Court such that Petitioner did not challenge imposition

21   of the Dixon rule based on a fundamental constitutional error, then the denial of Petitioner's state

22   habeas petition may have been based only on state law.  Thus, an independent state ground for

23   denying Petitioner's claim has been pled.

24          The adequacy, however, of the state procedural ground used to deny Petitioner's claim is not

25   sufficiently pled to preclude federal review.  In <u>Bennett v. Mueller</u>, in 2003, the Ninth Circuit could

26   not conclude that the application of California's untimeliness rule had been well-established and

27   consistently applied since the California Supreme Court's decision in <u>In re Robbins</u>. 322 F.3d at

28   583.  The Ninth Circuit has not yet recognized the <u>Dixon</u> rule as an affirmative defense of

procedural default in habeas corpus proceedings.  "[T]he ultimate burden of proving the adequacy of the California state bar is upon the State of California."  Bennett v. Mueller, 322 F.3d at 585-86. Respondent does not present any California case law decided since Robbins that demonstrates a consistent application of the Dixon rule.  The only state court case cited by Respondent on this point is In re Seaton, 34 Cal. 4th 193 (2004), however that decision considered a habeas petition rather than a criminal appeal and as such it does not "well-establish" or "consistently apply" the Dixon rule.  By the same reasoning used in Bennett v. Mueller, this Court finds that Respondent has not adequately pled that the Dixon rule is an adequate state ground which precludes federal review of Petitioner's claims.

The Superior Court's denial of Petitioner's second and third grounds for relief are not precluded from federal review.

### 2.  Review of Petitioner's Second and Third Claims for Relief

Petitioner's second ground for relief asserts that the trial court exhibited judicial bias by not listening to the police surveillance audio tape in its entirety or reading the entire transcript of the surveillance tape.  Petitioner's third ground for relief asserts that the trial court's refusal of his expert witness was also a result of judicial bias.  Habeas relief may be granted on claims of judicial bias because judicial bias implicates the federal right to due process.  "The right to a fair trial is a 'basic requirement of due process' and includes the right to an unbiased judge."  Haupt v. Dillard, 17 F.3d 285, 287 (9th Cir. 1994) (citing In re Murchison, 349 U.S. 133, 136 (1955)).  However, there is a "general presumption that judges are unbiased and honest."  Ortiz v. Stewart, 149 F.3d 923, 938 (9th Cir. 1998) (citing Withrow v. Larkin, 421 U.S. 35, 47 (1975)).  Moreover, upon federal habeas review, a state court's "finding of lack of bias is entitled to a presumption of correctness." Villafuerte v. Stewart, 111 F.3d 616, 632 (9th Cir. 1997).

The last reasoned state court decision on these claims was the San Diego Superior Court's denial of Petitioner's second state habeas petition.  (Lodgment 16.)  That decision was focused on applying the Dixon rule and therefore did not address the merits of Petitioner's claims.  In such instances, the Ninth Circuit has held, a federal court reviews the claims de novo.  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  "Nonetheless, under AEDPA, factual determinations by the

1   state court are presumed correct and can be rebutted only by clear and convincing evidence."  Id.

2          **a. Trial Court's Decision to Not Listen to the Audio Tape**

3        Petitioner first claims that the trial court exhibited judicial bias when it refused to listen to

4   the entire surveillance tape in the courtroom and did not review the entire transcript of that tape.

5   The trial court determined that it would not listen to the entire tape in open court for an hour,

6   asserting discretion "under 352."[6]  (Lodgment No. 2 at 147.)  California's Code of Evidence Section

7   352  allows the trial court judge discretion to determine if the value of the evidence is substantially

8   outweighed by its consumption of time.  The trial court judge in Petitioner's case applied the

9   discretion expressly granted by this state law.

10       Petitioner states that the trial court judge abused his discretion under California's Code of

11  Evidence Section 352 by listening to only four or five minutes of the one hour surveillance tape.

12  (Petition at 21.)  The trial court judge held that reliance on the transcript of the surveillance tape was

13  sufficient and that listening to the hour-long tape was an undue consumption of time.  In light of the

14  fact that the transcript of the hour-long tape totaled ten pages in length, the trial court judge

15  determined that much of the tape held no probative value.  (Lodgment 2 at 147.)  Portions of the tape

16  were played in open court.  (Lodgment No. 2 at 141, 144-45.)  A witness whose testimony was

17  impeached by way of the tape was given the opportunity to review the defense's entire transcript

18  prior to testifying.  (Lodgment No. 2 at 148-9.)  Petitioner makes no claim that the unheard portions

19  of the tape were more probative than time consuming.

20       "Trial judges are presumed to know the law and to apply it in making their decisions."

21  Lambrix v. Singletary, 520 U.S. 518, 531 n.4 (1997) (quoting Walton v. Arizona, 497 U.S. 639, 653

22  (1990)).  "To succeed on a judicial bias claim . . . a [habeas] petitioner must 'overcome a

23  presumption of honesty and integrity in those serving as adjudicators.'"  Rothwell v. Hubbard, 77

24

25  _____

26      [6]  The California Code of Evidence Section 352 reads:

27      The court in its discretion may exclude evidence if its probative value is substantially
    outweighed by the probability that its admission will (a) necessitate undue consumption

28      of time or (b) create substantial danger of undue prejudice, of confusing the issues, or
    of misleading the jury.    Cal. Evid. Code § 352 (Deering 2006).

1    Fed. Appx. 394, 396 (9th Cir. 2003) (quoting <u>Withrow v. Larkin</u>, 421 U.S. 35, 47 (1975)).

2    Petitioner does not present any facts in his habeas petition that suffice to overcome a presumption of

3    judicial neutrality.  Petitioner has not demonstrated judicial bias in violation of the U.S. Constitution

4    or federal law.

5                    **b. Exclusion of Petitioner's Expert Witness**

6             Petitioner next claims that the exclusion of a proposed expert witness evinced bias on the

7    part of the trial judge. Petitioner asserts that the expert witness would have testified to the poor

8    functioning of the narcotics operation and provide his opinion, as a retired Assistant Chief of Police,

9    of how the operation ought to have transpired.  (Petition at 22-23.)  Under California rules of

10   evidence:

11           If a witness is testifying as an expert, his testimony in the form of an opinion is
             limited to such an opinion as is:
12
             (a) Related to a subject that is sufficiently beyond common experience that the
13           opinion of an expert would assist the trier of fact; and

14           (b) Based on matter (including his special knowledge, skill, experience, training, and
             education) perceived by or personally known to the witness or made known to him at
15           or before the hearing, whether or not admissible, that is of a type that reasonably may
             be relied upon by an expert in forming an opinion upon the subject to which his
16           testimony relates . . .

17   Cal. Evid. Code § 801 (Deering's 2006).

18           At Petitioner's trial, the trier of fact was the judge.  The judge found that the expert's opinion

19   about the adequacy of the police reports in Petitioner's case would not have assisted the trier of fact

20   in better understanding police procedure for narcotics operations.  (Lodgment 2 at 203-05.)  The

21   judge also held that under California Code of Evidence Section 352 the testimony of the expert

22   witness was an undue consumption of time, in light of the "minimal relevance" of the proof he

23   would offer.  (Lodgment 2 at 295.)  On this claim as well, the trial court judge applied the discretion

24   expressly granted him by state law.  Petitioner does not present the Court with evidence sufficient to

25   overcome the presumption that this judicial determination regarding the application of the state law

26   was made honestly.  The presumption of judicial impartiality is clearly-established federal law, and

27   petitioner has not demonstrated judicial bias in violation of the U.S. Constitution or federal law.

28   ///

**C.      Ineffective Assistance of Trial Counsel**

Petitioner raises the same claims of ineffective assistance of counsel in his federal habeas petition as were raised in his state habeas petition.  (Lodgment 13 at 12-14.)  Petitioner bases his claim of ineffective assistance of trial counsel on five grounds: (1) trial counsel was deficient in failing to object to "improper closing remarks," (2) trial counsel failed to prepare for trial properly in order to adequately impeach inconsistent statements of government witnesses, (3) trial counsel failed to pursue a misidentification defense, (4) trial counsel failed to object during the prosecution's cross-examinations, and (5) trial counsel failed to argue that phone calls which were made and evidenced at trial "were not involved in the buy-bust operation."  (Petition at 23-24.)

Petitioner's brief in support of his federal habeas petition identifies the correct controlling United States Supreme Court case for claims of ineffective assistance of counsel, Strickland v. Washington, 466 U.S. 668 (1984).  By that decision, the Supreme Court articulated two requirements necessary to prevail on a claim of ineffective assistance of counsel.  First, "the defendant must show that counsel's performance was deficient."  Strickland, 466 U.S. at 687. "Deficient performance is performance which is objectively unreasonable under prevailing professional norms."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir., 1990).  Second, "the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687.  The goal of the Court in conducting the Strickland analysis is to find "whether the result of the proceeding was fundamentally unfair or unreliable."  Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

The last reasoned state court decision on this claim was issued by the Court of Appeal, Fourth Appellate District, on the state habeas petition filed by Petitioner.  The Court of Appeal applied the test from Strickland v. Washington in assessing Petitioner's claims.  (Lodgment 12 at 4.) The Court of Appeal ruled that Petitioner's claims of ineffective assistance of trial counsel failed because Petitioner did not demonstrate deficient performance by his trial counsel and also because Petitioner did not demonstrate that his trial counsel's performance affected the outcome of his trial. (Id.)  Thus it is this Court's role to examine whether the Court of Appeal's decision was an unreasonable application of the clearly established Strickland test.  28 U.S.C. § 2254(d) (2006).

1    Petitioner's first assertion about his trial counsel's performance - regarding "improper

2   closing remarks" - would be difficult to prove even if Petitioner specified which remarks by the

3   prosecution Petitioner believes his defense attorney should have objected to.  Without such

4   specification, Petitioner has not met his burden of demonstrating deficient performance that is

5   "objectively unreasonable under prevailing professional norms."  Hughes v. Borg, 898 F.2d at 702.

6   Petitioner also fails to describe how his defense counsel's performance caused him prejudice.  "A

7   petitioner must 'affirmatively prove prejudice.' [Strickland,] 466 U.S. at 693. This requires showing

8   more than the possibility that he was prejudiced by counsels' errors. Rather, he must demonstrate

9   that the errors actually prejudiced him."  Pizzuto v. Arave, 280 F.3d 949, 955 (9ᵗʰ Cir. 2002).  Upon

10  review of the trial record, the Court does not find that any of the prosecution's closing remarks were

11  obviously improper. (Lodgment 2 at 296-298.)  The closing argument reviewed the evidence

12  presented to the court over the course of the trial, and spoke to the credibility of the prosecution

13  witnesses.  (Id.)  The veracity of Petitioner's testimony at trial was questioned by the prosecutor, but

14  these remarks were based on Petitioner's undisputed acts preceding his arrest rather than on

15  Petitioner's character. (Lodgment 2 at 298.)  The Court of Appeal's decision that Petitioner failed to

16  meet his burden of showing prejudice is a reasonable application of the Strickland test.

17    Petitioner's second assertion is that his trial counsel failed to properly cross-examine and

18  impeach the prosecution's witnesses with prior inconsistent statements.  Petitioner provides no

19  specific instances where his trial counsel's cross-examination of witnesses was objectively

20  unreasonable under prevailing professional norms.  Nor does Petitioner provide any references to the

21  prior statements that he believes his trial counsel should have used to impeach the prosecution

22  witnesses' testimony.  "Conclusory allegations which are not supported by a statement of specific

23  facts do not warrant habeas relief."   James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).  Thus the Court

24  of Appeal was not unreasonable in determining that, under Strickland, Petitioner failed to meet his

25  burden of demonstrating deficient performance of counsel.

26    The third example of ineffective assistance of counsel raised by Petitioner is the failure of his

27  defense attorney to pursue a misidentification defense.  On this claim, too, it is Petitioner's burden to

28  "overcome the presumption that, under the circumstances, the challenged action might be considered

sound trial strategy." <u>Strickland,</u> 466 U.S. at 689 (quotation omitted).  Again Petitioner fails to
elaborate on what he perceives his counsel's shortcomings to have been.  Petitioner states only that
it was deficient for his attorney not to pursue a misidentification defense, but does not provide any
support for his claim that such a defense was viable.  "[T]he court strongly presumes 'that counsel's
conduct falls within the wide range of reasonable professional assistance.'" <u>James v. Borg,</u> 24 F.3d
at 27 (quoting <u>Strickland,</u> 466 U.S. at 689).  Thus it was not an unreasonable application of
<u>Strickland</u> for the Court of Appeal to deny Petitioner relief based on its finding that Petitioner
"failed to show what defense his trial counsel failed to present and what evidence existed to support
the defense."  (Lodgment 12 at 4.)

Next the Court considers Petitioner's claim that trial counsel was ineffective for failing to
object during the prosecution's cross-examination.  Petitioner does not specify the cross-
examination of any particular defense witness or witnesses, only that defense counsel failed to make
objections.  Petitioner has not met the requirements of the <u>Strickland</u> standard with such a claim,
because he can demonstrate neither that his counsel's performance was deficient nor that the
deficient performance prejudiced his defense.  <u>Strickland v. Washington,</u> 466 U.S. at 688.  Therefore
the Court of Appeal reasonably applied <u>Strickland</u> when it rejected Petitioner's claim.

Petitioner's final claim as to the ineffective assistance of counsel is that his defense attorney
failed to argue that the telephone calls between Petitioner and his cousin were not drug-related.
Respondent answers this claim with a reference to the trial transcript in which Petitioner's trial
counsel did in fact argue that a call to Weir was not related to the drug sale.  (Answer at 18-19.)
These references negate Petitioner's claim.  Petitioner can not demonstrate prejudice from a failure
to advance an argument if that argument was in fact made at trial.  Thus it was not an unreasonable
application of clearly established federal law for the Court of Appeal to deny Petitioner's request for
relief based on ineffective assistance of trial counsel.

**E.  Claim of Ineffective Assistance of Appellate Counsel**

The Court of Appeal denied Petitioner's claim of ineffective assistance of appellate counsel
because Petitioner did not show that appellate counsel's performance was deficient and prejudiced
the result of his appeal.  Petitioner bases his federal claim of ineffective assistance of appellate

counsel on seven assertions: (1) that appellate counsel did not argue that the recording on the police tactical tape was inconsistent with the trial testimony of police witnesses, (2) that appellate counsel did not argue

on appeal that the police witnesses perjured themselves, (3) that appellate counsel did not argue that the telephone calls between Petitioner and his cousin were not drug-related, (4) that appellate counsel did not raise the issue that the police who testified at trial were not the same persons heard on the tape, (5) that appellate counsel failed to argue that someone else may have made statements on the tape that were attributed to Petitioner at trial, (6) that appellate counsel did not raise on appeal that Petitioner was identified as a suspect on the tape because he matched the description of black male, and (7) that appellate counsel was ineffective because he conceded that the evidence at trial may have shown that Petitioner knew that his cousin dealt drugs.  (Petition at 25-27.)  The Court reviews the state court's ruling to determine if that decision was contrary to, or an unreasonable application of, clearly-established federal law.  28 U.S.C. § 2254(d) (2006).

"The proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in Strickland."  Smith v. Robbins, 528 U.S. 259, 285 (2000) (citing Smith v. Murray, 477 U.S. 537, 535-36 (1986).  Petitioner must first show that his appellate counsel's performance fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 688.  He then must establish that he was prejudiced by counsel's errors.  Id. at 694.  To establish prejudice, Petitioner must demonstrate that he would have prevailed on appeal absent counsel's errors.  Smith, 528 U.S. at 285.  "[T]hese two prongs partially overlap when evaluating the performance of appellate counsel . . . Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason - because she declined to raise a weak issue."  Bailey v. Newland, 263 F.3d 1022, 1028-9 (9th Cir. 2001) (quoting Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989).

Petitioner's first claim of ineffective assistance of appellate counsel asserts deficient performance because "[a]ppellate counsel would not raise on direct appeal that the whole entire tactical tape of the police officers were [sic] contrary to the testimony of the six officers during trial."  The brief filed on Petitioner's behalf by his appellate counsel undermines Petitioner's claim,

1   in that the brief discusses the trial defense "that the tape contradicted many of the officer's

2   recollections regarding the operation." (Lodgment 3 at 5.)  The brief also makes use of consistencies

3   between the tape and the trial testimony, such as when appellate counsel argues that "[t]he police

4   transcript and officer Harper's testimony both showed that appellant met Weir after the latter had

5   walked away from the car and that Weir and Stills walked back to Weir's car together." (Lodgment

6   3 at 6.)  Appellate counsel thus demonstrates a familiarity with both the transcript of the surveillance

7   tape and with the testimony recorded in the trial transcript.  Appellate counsel's use of both to make

8   a strong appellate argument that Petitioner was convicted only on circumstantial evidence exhibits

9   reasoning which satisfies the Sixth Amendment requirement that counsel "bring to bear such skill

10   and knowledge as will render the trial a reliable adversarial testing process."  Strickland, 466 U.S. at

11   688.  Thus, on this ground Petitioner has not shown that the Court of Appeal unreasonably applied

12   the Strickland standard to his claim of ineffective assistance of appellate counsel.

13      Petitioner's next claim is that his appellate counsel was ineffective because he did not raise

14   on direct appeal that the police officers who testified in his case perjured themselves.  Petitioner's

15   claim would be strengthened if he provided any examples of these alleged perjuries.  The Supreme

16   Court has held that appellate counsel "need not (and should not) raise every nonfrivolous claim, but

17   rather may select from among them in order to maximize the likelihood of success on appeal."

18   Smith v. Robbins, 528 U.S. 259, 288 (2000) (citing Jones v. Barnes, 463 U.S. 745 (1983)).

19   Appellate counsel for Petitioner pointed out some inconsistencies in the testimony of prosecution

20   witnesses, but without accusing those witnesses of perjury.  The decision to claim inconsistencies in

21   testimony, but not claim perjury, exhibits professional competence rather than objectively

22   unreasonable performance.  The Court of Appeal's denial of Petitioner's claim of ineffective

23   assistance of appellate counsel was not contrary to clearly established federal law on the ground that

24   witness perjury was not raised on appeal.

25      Petitioner's third claim of ineffective assistance of appellate counsel alleges that his appellate

26   counsel was deficient in not raising a claim that phone calls made between Petitioner and his co-

27   defendant were unrelated to the drug transaction that Petitioner was convicted of facilitating.  This

28   ground lacks merit because the brief filed in Petitioner's appeal raises this precise claim that

1  Petitioner faults his counsel for ignoring.  The brief argues that:

2          the [trial] court's conclusion that the telephone call to Weir involved
           narcotics violates the proscription against the use of circumstantial
3          evidence where that evidence is reasonably susceptible of the accused's
           innocence.  Here, all of appellant's conduct throughout the buy/bust
4          operation was more consistent with waiting for a ride from his cousin
           than it was with operating a narcotics business, and the telephone call to
5          appellant's cousin was no more indicative of criminal activity that
           anything else he had done to that point.

6

7  (Lodgment 3 at 17.)  The brief goes on to argue that "as no one overheard the conversation, there is

8  no actual evidence the discussion centered on the transaction at all."  (Lodgment 3 at 19.)  Petitioner

9  cannot demonstrate that his appellate counsel was deficient in not raising a claim that his counsel did

10  in fact raise.

11          Petitioner's fourth ground for claiming ineffective assistance of appellate counsel is that

12  appellate counsel did not raise the issue that the police who testified at trial were not the same

13  persons heard on the surveillance tape.  As stated above, the Court believes that appellate counsel

14  did demonstrate a familiarity with both the transcript of the surveillance tape and with the testimony

15  recorded in the trial transcript.   "A reasonable tactical choice based on an adequate inquiry is

16  immune from attack under Strickland."  Gerlaugh v. Stewart, 129 F.3d 1027, 1033 (9th Cir. 1997).

17  Furthermore, Petitioner does not demonstrate prejudice from the ommission of this argument upon

18  appeal of his conviction.  The evidence of Petitioner's statement on the surveillance tape ("It's

19  coming, it's coming") was the critical evidence in Petitioner's case, as was testimony of Petitioner's

20  gestures to the actual seller of cocaine.  (Lodgment 6 at 5 (Court of Appeal affirming conviction

21  because "[i]t was reasonable to infer from [the] sequence of events, highlighted with Portis's

22  statement 'It's coming.  It's coming,' and Portis waving over the car Wier was driving that Portis

23  facilitated the sale of rock cocaine."))   The result of Petitioner's appeal would not have been

24  different depending on whether or not the recorded statements of the police were attributed to the

25  correct officers.   Petitioner's fourth ground does not state a claim which shows that the Court of

26  Appeal's denial of his claim of ineffective assistance of appellate counsel was contrary to, or an

27  unreasonable application of, clearly established federal law.

28          The fifth ground on which Petitioner claims ineffective assistance of his appellate counsel is

- 19 -                                              06cv0314

that appellate counsel failed to argue that someone else may have made statements on the tape that were attributed to Petitioner.  Petitioner offers no argument as to the likelihood that the appellate court may have reviewed the trial court's fact finding on this point if it had been raised by his counsel.  Petitioner therefore does not demonstrate prejudice on this ground, because he does not demonstrate any possibility of success of overcoming upon appellate review the trial testimony of the police witness who heard Petitioner say "It's coming, it's coming." (Lodgment 2 at 126 (testimony of Officer Steven William Dyer).)  Rather than claim that someone else may have made this statement, appellate counsel instead argued that such evidence was only circumstantial evidence of the crime.  (Lodgment 3 at 12 ("appellant's reported comment, 'yeah, it's coming, it's coming,' tended only to show that appellant knew his cousin was a dealer").)  Counsel's choice to argue against the weight of this evidence rather than to deny the evidence, constituted reasonably effective assistance.  Thus on his fifth ground for claiming ineffective assistance of appellate counsel, Petitioner has not shown that the Court of Appeal unreasonably applied the <u>Strickland</u> standard in denying him habeas relief.

Next, Petitioner claims that appellate counsel was ineffective because he did not raise on appeal that Petitioner was identified as a black male on the police surveillance tape.  "[T]he weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." <u>Miller v. Keeney</u>, 882 F.2d 1428, 1434 (9th Cir. 1989).  As Respondent argues with reference to the transcript of the police surveillance tape, Petitioner was not arrested based solely on an identification as a black male.  These references show that the arresting officers also identified Petitioner by his location ("in front of the store"), his size ("Kind of large built"), and the clothing that he wore ("He's got a T-shirt that's green but it has gray sleeves and white shorts").  (Respondent's Memorandum at 22 (quoting Lodgment 2 at 192).)  On this ground as well, Petitioner has not demonstrated that his appellate counsel's representation fell below an objective standard of reasonableness, and therefore the Court of Appeal's denial of this claim was in conformity with clearly-established federal law.

Petitioner's last ground for claiming ineffective assistance of appellate counsel is that appellate counsel conceded that the evidence at trial may have shown that Petitioner knew that his

cousin dealt drugs.  As referenced above, appellate counsel made this concession in an attempt to dispute the strength of evidence that appellate counsel identified as "the most damaging evidence, appellant's reported comment, 'yeah, it's coming, it's coming.'" (Lodgment 3 at 12.)  The concession that this evidence may have shown that Petitioner knew that his cousin dealt drugs was an argument from appellate counsel that the evidence showed nothing more, that the evidence "did not render appellant a participant in the transaction."  Id.  This argument was made to support the major claim on appeal that Petitioner's conviction was based solely on circumstantial evidence. Thus this concession was made by appellate counsel in the course of reasonably effective assistance of counsel.  As Petitioner himself has continuously mimicked his appellate counsel's argument by claiming that his conviction was based on insufficient evidence throughout two state habeas petitions and the current federal petition, this ground appears to the Court to be a disingenuous argument.  More importantly, the ground is without merit because it neither demonstrates that appellate counsel's representation fell below an objective standard of reasonableness, nor that it was prejudicial to Petitioner's case.  On this final ground, the Court finds that the Court of Appeal's decision was not contrary to, or an unreasonable application of, clearly-established federal law on the Sixth Amendment's guarantee of effective assistance of counsel.

**CONCLUSION**

After thorough review of the record in this matter and based on the foregoing analysis, this Court recommends that the Petition for Writ of Habeas Corpus be DENIED and this action be DISMISSED WITH PREJUDICE.  This Proposed Findings of Fact and Recommendation for Disposition of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, the Honorable Dana M. Sabraw, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (2006) and Local Rule 72.1(d).

IT IS HEREBY ORDERED that **no later than January 29, 2007**, any party may file and serve written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed and served no later than ten days after being served with the objections.  The parties are advised that failure to file

1    objections within the specified time may waive the right to raise those objections on appeal of the

2    Court's order.  Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

3

4    DATED: December 26, 2006

5

6                                                LOUISA S PORTER
                                                 United States Magistrate Judge
7

8    cc:      Honorable Dana M. Sabraw
                all parties
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              - 22 -                                    06cv0314